**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| GINA JENKINS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0966-CV-W-FJG |
| | ) | |
| GORDON R. ENGLAND, et al., | ) | |
| Defendants. | ) | |

# ORDER

Pending before the Court are (1) Defendant England's Motion for Summary Judgment with Supporting Suggestions (Doc. No. 88); (2) Defendant End to End, Inc.'s Motion for Summary Judgment (Doc. No. 90); and (3) Defendant Clayton Hartley's Motion to Dismiss, and Suggestions in Support Thereof (Doc. No. 138). Each will be considered below.

**I.     Defendant England's Motion for Summary Judgment with Supporting Suggestions (Doc. No. 88)**

Defendant England, Secretary of the Department of the Navy, seeks summary judgment on plaintiff's claims in Counts I and II of her First Amended Complaint based on the following grounds:

A.     Plaintiff did not seek timely EEO counseling on her sexual harassment claim;

B.     Plaintiff cannot establish a prima facie case of sexual harassment;

C.     The Navy took reasonable care to avoid sexual harassment by a co-worker;

D.     Prompt and effective measures were taken to prevent and remedy any sexual harassment by a supervisor and Jenkins failed to avail herself of available remedies; and

E.     Jenkins cannot establish retaliation because the Navy did not take any action

materially adverse to a reasonable employee.

A.    **Facts**[1]

End to End Technical Services, Inc. ("ETE") had a contract with the Navy to provide technical and administrative workers.  Plaintiff was hired by ETE to work as an administrative assistant in October of 2001, at the Navy Recruiting District Office in Kansas City, Missouri (hereinafter, "the command" or "NRD-KC").  In August of 2002, Plaintiff applied for the position of Program Analyst (also known as statistician) and was hired for the position by ETE after a favorable recommendation from the Navy.  The duties of the Program Analyst were detailed in a statement of work and included providing direct support to the Enlisted Programs Officer.

Plaintiff was paid by ETE.  ETE provided all of Plaintiff's benefits.  Plaintiff was an "at will" employee of ETE, and ETE had the power to fire Plaintiff.  Plaintiff was required to follow the policies and procedures of ETE to conduct her daily work, as set out in an employee handbook covering the topics: conditions of employment and practices, working hours and pay, benefits changes in employment, work policies and regulations, safety,

---

[1]In the following recitation of facts, the Court has viewed the evidence in the light most favorable to plaintiff, and has given her the benefit of all reasonable factual inferences.  See Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1070 (8th Cir.), cert. denied, 525 U.S. 821, (1998).  However, plaintiff has failed to specifically controvert in numbered paragraphs the Defendant's statement of facts in her response to the pending motion for summary judgment.  (See Doc. No. 136.)  In accordance with Local Rule 56.1(a), "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party."  See Ruby v. Springfield R-12 Public School District, 76 F.3d 909, 911 n. 6 (8th Cir. 1996).  In her response, plaintiff sets forth her own statement of facts, many of which are not supported by competent evidence that could be considered by the Court in the summary judgment context.  Consequently, the facts stated below are derived from Defendant's statement of facts, unless otherwise indicated.

2

employee concerns, and disciplinary procedures. The number of hours to be worked by contract employees was controlled by the contract between ETE and the Navy and no overtime was allowed. Matters of discipline of ETE employees, such as excessive tardiness or insubordination, were handled by ETE.

During the time of the events at issue, Jenkins' immediate supervisor was the head of the Enlisted Programs Office. That position was held by Lieutenant Commander Mary Kortz (a Navy officer) at the time of the alleged sexual harassment in October of 2003, until April of 2004. After April of 2004, Lieutenant Chris Webster (a Navy officer) was head of the Enlisted Programs Office. The immediate supervisor of the head of the Enlisted Programs Office was the Executive Officer, Michael Borrosh. The second line supervisor of the head of the Enlisted Programs Office was the Commanding Officer. The position of Commanding Officer, or Commander, was held by Scott Hale from June of 2003 to November of 2005. Plaintiff was supervised by ETE project manager, Carol Corey (formerly Martin).

Wesley Jones (hereinafter, "Jones"), the alleged harasser, was an enlisted man with the rank of E-9. His position in the command was the Command Master Chief ("CMC"). His duties were: (1) to assist the Commander in all matters pertaining to the welfare, health, job satisfaction, morale, utilization and training of enlisted personnel; (2) to act as the senior enlisted advisor to the Commander on policy pertaining to enlisted personnel. Jones was not the supervisor of Plaintiff.[2] Jones did not advise Commander Hale on any matter

---

[2]Plaintiff attempts to dispute this fact and the remainder of the facts listed in this paragraph, noting the duties of a Command Master Chief could include interviewing independent contractor employee applicants for civilian positions in the District, noting that Jones' predecessor interviewed her at the time of her hire. Jenkins Depo., Ex. 1,

3

affecting Plaintiff or any other civilian employee. Jones did not have any input in hiring, firing, or altering the terms and conditions of employment of Plaintiff, or any other civilian member of the command.

Clayton Hartley (hereinafter, "Hartley") allegedly participated in retaliation against Plaintiff. Hartley was the Chief Recruiter at the command. Hartley was not the head of the Enlisted Programs Office. Hartley was not the supervisor of Plaintiff. Hartley did not have any input in hiring, firing, or altering the terms and conditions of the employment of Plaintiff, or any other civilian member of the command.

Jones was assigned to the command on October 14, 2003. Plaintiff claims that Jones engaged in sexually offensive conduct from October 16, 2003, until December 4, 2003. The last act Plaintiff claims to be sexual harassment occurred on or before December 4, 2003. Plaintiff testified at deposition that the sexual harassment by Wesley Jones stopped on December 4, 2003:

> Q: And do you also remember telling Dr. Samuelson that after the confrontation between Commander Hale and Mr. Jones on December 4th, 2003, that the harassment did stop?
>
> A. The sexual harassment did stop.
>
> Q. And is it true even today that after the meeting on December 4th, 2003, the sexual harassment did stop?
>
> A. The sexual harassment did stop.

Ex. 1 to Doc. No. 88, P. Depo. at 139:17-25. Plaintiff's first contact with a Navy Equal

---

48:8-18. However, even assuming that this "fact" alone is enough to controvert defendant's statement of facts, as the Court will analyze whether Defendant could be liable if Jones were considered a co-worker or a supervisor of Plaintiff, this fact is not material for purposes of summary judgment.

Employment Opportunity counselor was on February 10, 2004.[3]

The Court ordered that Plaintiff file a designation of each incident of discrimination, including: (a) a brief description of the incident or happening; (b) the date and place thereof; and (c) the identity of the persons involved. Plaintiff set out a complete list of the conduct that Plaintiff claims to be the essential bases of her claims for sexual harassment and retaliation in a pleading captioned, Plaintiff's Designation of Incidents, Doc. No. 37.

Plaintiff's Designation of Incidents set out the following offensive comments about her looks: (1) Jones "made almost daily comments on her looks" between October 16 to December 4, 2003; (2) Jones "repeatedly" told Plaintiff "how attractive and sexy she was," from October 16 to October 31, 2003, and; (3) Jones directed "leering, suggestive, 'up and down' looks" at Plaintiff between October 14 to December 4, 2003. Doc. No. 37, p.1.

Plaintiff's Designation of Incidents set out the following requests for dates and sex: (1) Jones "repeatedly" asked Plaintiff "to go out with him after work" from October 16 to December 4 of 2003; (2) Jones "repeatedly" asked Plaintiff "to have sex with him" from October 16 to December 4 of 2003; (3) Jones told Plaintiff, "he had girls who would give him 'blow jobs' if she would not do anything for him" (one occasion in November of 2003); (4) Jones told Plaintiff, "let's do it one time, I will let you be in control" (one occasion in November 2003); and (5) Jones told Plaintiff, "he would give her 'a dollar to dance on his desk'" (one occasion in November of 2003). Doc. No. 37, pp. 1-2.

---

[3]Plaintiff argues that when she desired to file a complaint about the harassment in early January, 2004, Commander Hale and Executive Officer Borrosh informed her that she could not do so. As the Court does not need to reach the issue of whether Plaintiff timely sought EEO counseling in order to grant summary judgment in this matter, the Court does not find this dispute of fact material for summary judgment purposes.

5

Plaintiff's Designation of Incidents set out the following hostile behavior by Jones: (1) Jones gave, "angry, malevolent, looks" in November of 2003; (2) Jones said, "she was on his 'shit list' for not dating him" (one occasion in November of 2003); (3) Jones "cursing and swearing" at Plaintiff for not going to lunch with him (one occasion in November of 2003), and (4) Jones said Plaintiff was "'pissing him off' by not dating him," on one occasion in November of 2003.

Plaintiff's Designation of Incidents set out one instance of an offensive touching by Jones: "inappropriately touching and fondling Ms. Jenkins' legs and inner thighs" in November of 2003. Plaintiff described the touching incident at deposition, as follows: "And he leaned down to what I though he was going to open my drawer, but he put his hand on my right ankle and proceeded to move his hand all the way up to my inner thigh. And I said, hello, that's not where my candy jar is." Ex. 1 to Doc. No. 88, P. Depo. at 178:18-22.

Concerning the offensive touching, Plaintiff further testified at deposition:

Q.    Did he just touch one of your legs and thighs or both of them?

A.    One leg.

Q.    And how long did that touching take?

A.    It was very quick. It was just taking – starting at my ankle and moving upward to my thigh. It happened very quickly.

Ex. 1 to Doc. No. 88, P. Depo. at 180:9-15.

The Navy has detailed sexual harassment policies in place, known as COMNAVCRUITCOM 5354.1 and COMNAVCRUITCOM 5354.2. Under the Navy's policies, a person who believed they had been harassed was encouraged, but not required, to attempt to resolve the situation informally by addressing the concerns with the person

6

demonstrating the behavior. If the offensive conduct did not stop, the person was to notify their chain of command immediately. An Inspector General's hot line number was available so that if offensive conduct continued or the chain of command condoned the conduct or ignored a report, individuals who were subjected to offensive behavior could promptly communicate the incident. Training was offered quarterly and annually to all persons working at the command, including civilian contract employees, by the Command Managed Equal Employment Officer (hereinafter, "CMEO"), Sean Williamson. Jones came to the command with 26 years of military service and had received training on the sexual harassment policy. Plaintiff was also aware of the sexual harassment policy.

Plaintiff typed out a detailed, written statement on or about January 21, 2004, detailing the events at issue. In her statement, she admits that she failed to inform management of inappropriate comments by Jones, specifically: "I was sick to my stomach over his comments and I told my co-workers but I had yet to say anything to anyone in the Command." Ex. 1, P. Depo. at Ex. 5, p. 3, 235:7-24.[4] In Plaintiff's January 21, 2004, written statement, she admits that she sought and received advice on the Navy sexual harassment policy in mid-November of 2003, but failed to report specific details, requested anonymity and requested that no formal action be taken, specifically: "I turned to Chief Williamson . . . the CMEO [Command Managed Equal Employment Officer]. . . . Behind

_____

[4]Plaintiff attempts to controvert this fact by stating that during the early part of the week of November 17, plaintiff informed CMEO Williamson that she was being subjected to unwelcome comments and sought his advice. Plaintiff claims that this reporting was sufficient to put the Navy on notice regarding the alleged harassment. However, plaintiff fails to mention that she did not report names or details, requested anonymity, and requested that no formal action be taken (see the next sentence of the statement of facts, above). Under these facts, the Court cannot find that the Navy had knowledge of plaintiff's complaints as of November 17, 2003.

closed doors I told him that I was in a situation that was making me uncomfortable and I needed to know what my options were. I did not give him names or details. I told him that I did not want to file a formal complaint at this time. He told me that my options were to file a formal complaint, which would go to the command, or I could approach that person and give him a verbal warning. I choose (sic) to approach the CMC and requested that the CMEO give me the opportunity to handle this on my own. He agreed, not knowing the severity of the situation, and only with my assurance that I would immediately report the incident if the situation did not stop immediately." Ex. 1 to Doc. No. 88, P. Depo. at Ex. 5, p. 3; P. Depo. at 180:24-25 to 181:1-15. Plaintiff did not report offensive conduct to management and directed co-workers not to disclose the conduct.

In her January 21, 2004, written statement, Plaintiff confirmed that Sean Williamson, the CMEO, sent out a note in the weekly newsletter and in an e-mail concerning sexual harassment after she contacted him, specifically: "During this time frame Chief Williamson included a CMEO note in the POW [Plan of the Week] about sexual harassment. He further reiterated his statement in an email sent to all military staff attached to the Command." Ex. 1 to Doc. No. 88, P. Depo. at Ex. 5, p. 4.

On or about December 1, 2003, Commander Scott Hale became aware through another employee that there was a potential issue of sexual harassment.[5] Commander

_____

[5]Plaintiff provides the purported "affidavit" of Chief Waranch in response. Waranch (who worked in the Joplin office of Defendant, not the Kansas City office as did Plaintiff) states that he reported the inappropriate touching to Commander Hale "shortly after learning of it," and that Hale did nothing to stop the behavior. Waranch's "affidavit," however, is not a valid affidavit because it does not bear a notary stamp or seal, and the document does not qualify as an unsworn declaration pursuant to 28 U.S.C. § 1746 because it was not sworn to be true under penalty of perjury; See also DeMars v. O'Flynn, 287 F.Supp.2d 230 (W.D. N.Y. 2003).

8

Hale immediately contacted Sean Williamson, the CMEO. Williamson informed him that an informal resolution procedure was in progress concerning comments by Jones that were offensive to Jenkins. On December 4, 2003, Commander Hale confronted Jones, and Jones denied that he was aware of an issue with Jenkins. Commander Hale then asked Jenkins and Jones and CMEO Williamson to meet and discuss the issues on the morning of December 4, 2003.

Plaintiff initially refused to participate in a meeting to discuss offensive conduct by Jones on the morning of December 4, 2003. By the afternoon, she agreed to discuss the issues if a civilian employee who was also her sister, Tricia Hertzog, and civilian liaison Kathy Cherito were present. She then revealed details of Jones' offensive conduct for the first time. Jones apologized for his behavior. Jenkins requested that no formal investigation or further formal action be taken. Commander Hale kept Jones in his office after the meeting and directed him to immediately stop any sexually offensive comments and behavior. On December 4, 2003, Commander Hale told Gina Jenkins that Jones had been put on notice that his conduct was to stop and that if his conduct did not stop that Hale would take further action.

Plaintiff's Designation of Incidents set out actions that form the essential bases of her retaliation claim. Doc. No. 37, Plaintiff's Designation of Incidents, p. 2. Plaintiff's Designation of Incidents set out the following conduct by Jones and Hartley that she claims was intended to isolate and ostracize her and damage her personal and work reputations: (1) Smirking by Jones in January and February of 2004; (2) Hartley telling co-workers to

Therefore, the Court will not consider this "affidavit" in ruling on the pending motions for summary judgment.

"stay away" from Plaintiff because of "her penny ante bullshit" on one occasion in January of 2004 and Jones telling co-workers to stay away from Plaintiff because she "would take things out of context and get them in trouble" in January and February of 2004; (3) Hartley telling recruiters not to congregate near Plaintiff's desk on one occasion in January of 2004; (4) Hartley telling Plaintiff that, "she had made her bed and she can lie in it" on one occasion in March or April of 2004; (5) Hartley "berating" Plaintiff's job performance beginning in February of 2004 and refusing to interact directly with Plaintiff to get statistics that he needed in February and March of 2004; (6) Hartley and Jones spreading rumors that Plaintiff was "sleeping with a Chief" in January of 2004; and (7) Commander Hale failing to stop the rumors. Doc. No. 37, pp. 2-3. Plaintiff's Designation of Incidents set out the following comments by Hartley and Jones relating to their desire that she leave her job: (1) Plaintiff heard that Hartley and Jones had each said that he was going to "take down" Plaintiff in January of 2004; (2) Hartley said to Plaintiff that the Navy "was not the best avenue for her" in March or April of 2004; and (3) Commander Hale failed to address the "take down" comments in January of 2004. Doc. No. 37, p. 3. Plaintiff's Designation of Incidents set out an allegation that Plaintiff was required to "work from 8 a.m. to 5 p.m. in spite of the known necessity to work outside of regular hours to complete month-end reports" from April through May of 2004. Doc. No. 37, p.3. Plaintiff's Designation of Incidents set out an allegation that "all civilian employees" were not allowed to participate in a "Naval recreation and picnic day" on one occasion in the summer of 2004, and from "exercising at the adjacent center" in March of 2004. Doc. No. 37, pp. 3-4.

A holiday stand down (a period of liberal leave for military personnel) took place from December 19, 2003 to January 5, 2004. On January 9, 2004, Commander Hale had

Plaintiff's supervisor contact her to determine if there was an unresolved issue after she appeared to be upset. Plaintiff's January 12, 2004, written statement indicated that Jones was telling enlisted members of the command to be careful of what they said around Jenkins or they could get into trouble. An independent investigation was conducted by Commander Diane Bizzell from January 21-24, 2004. On January 26, 2004, Jones was placed on administrative leave in order to separate the Plaintiff and Jones. On February 23, 2004, Commander Hale issued a letter of detachment for cause to Jones. If a Command Master Chief is detached for cause, there is no further job with the Navy, so the individual is, in effect, asked to retire, and his Navy career is ended.

Navy equal employment officer Sean Williamson asked Hartley to be friendlier to Jenkins in March of 2004. Commander Hale asked department managers to refrain from discussing the harassment incidents initially and then on March 1, 2004, the first time that all members of the Command were together in one place, Commander Hale read a statement to all directing that all discussion of the harassment incidents stop immediately.

After December 4, 2003, an effort was made to make workplace behavior by military members of the command more formal, respectful, and dignified.[6] Jenkins received awards from the Navy in 2004 and 2005 for "exceptionally outstanding performance as a statistician." Jenkins received "on-the-spot" bonus awards from ETE with concurrence by the Navy at the end of the year in 2003, 2004, and 2005. Plaintiff was able to perform her job duties after she raised her claim of sexual harassment and no member of the command

---

[6]Plaintiff attempts to controvert this fact; however, the only support for her controversion is the "affidavit" of Waranch, which, as discussed above, is not proper evidence and shall not be considered by this Court in ruling on the pending motions.

11

spoke to her about any problem with her work.[7]  Military members were required to exercise.  Civilians were allowed to exercise during the work day and that privilege was not rescinded by Commander Hale.

Jenkins remained in her job as statistician after December 4, 2003, and her job duties did not change.  Jenkins did not receive any kind of demotion or reassignment after December 4, 2003.

B.    Summary Judgment Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  The facts and inferences are viewed in the light most favorable to the nonmoving party.  Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986).  The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law.  Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997).  To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal

_____

[7]Again, Plaintiff attempts to controvert this fact; however, the only support for her controversion is the "affidavit" of Waranch, which, as discussed above, is not proper evidence and shall not be considered by this Court in ruling on the pending motions.

12

issues involved. <u>Lower Brule</u>, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. <u>Id.</u> Rather, "the disputes must be outcome determinative under prevailing law." <u>Id.</u> (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." <u>Matsushita</u>, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." <u>Celotex</u>, 477 U.S. at 327.

    C.    <u>Analysis</u>

        1.    Sexual Harassment Claim

Defendant makes four arguments in support of the position that Plaintiff's sexual harassment claim should be dismissed: (1) Plaintiff did not seek timely EEO counseling on her sexual harassment claim; (2) Plaintiff cannot establish a prima facie case of sexual harassment; (3) The Navy took reasonable care to avoid sexual harassment by a co-worker; and (4) Prompt and effective measures were taken to prevent and remedy any sexual harassment by a supervisor and Jenkins failed to avail herself of available remedies. Because this Court finds the latter two of these four arguments to be dispositive, the Court considers only those two arguments below.

        a.    Co-Worker Sexual Harassment

Defendant England notes that the standard for employer liability when an alleged

13

harasser is a co-worker (as opposed to Plaintiff's supervisor) is that Plaintiff has the burden of proving that the employer knew or should have known about the harassment and was negligent in failing to discover the situation and undertake immediate and appropriate corrective action.  See Faragher v. City of Boca Raton, 524 U.S. 775, 799-800 (1998); Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 760 (1998); Weyers v. Lear Operations Corp., 359 F.3d 1049, 1056 (8th Cir. 2004); 29 C.F.R. § 1604.11(d).  Assuming that Defendant Jones was Plaintiff's co-worker[8], Plaintiff must set forth facts that establish that the Navy knew or should have known of Jones' conduct and failed to act.

Defendant states that Plaintiff made an affirmative effort to keep Jones' conduct from being discovered by the Navy, telling co-workers not to disclose comments they overheard Jones making to Plaintiff, telling CMEO Williamson that she was having some problems but wanted to handle them herself without involving the Navy[9], and only affirmatively reporting Jones' conduct after being confronted on December 4, 2003.[10]  "[E]mployees have some

---

[8]This assumption is most likely accurate; Plaintiff has not controverted the great majority of Defendant's facts with respect to Defendant Jones' authority over Plaintiff, and has only suggested that Defendant Jones had some sort of authority because his predecessor sat in on Plaintiff's job interview at the time of her hire.  Nonetheless, the Court also will consider Defendant England's liability if Jones were considered Plaintiff's supervisor in order to foreclose this issue.

[9]See Plaintiff's January 21, 2004 statement, wherein she states she did not provide CMEO Williamson with names or details regarding the harassment when she spoke with him about her options in November 2003.

[10]Notably, although in her opposition Plaintiff attempts to raise issues to the contrary, in her deposition Plaintiff affirmatively stated that the first person she told of the touching, other than Stefani Kretzer and her sister, was Commander Hale on December 4, 2003.  Ex. 1 to Doc. No. 144, Pl. Depo. 367:22-25, 368:1-7 ("Q. Who was the first person, other than Trisha Hertzog and Stefani . . . . That you told in the district that Mr. Jones had touched you inappropriately?  A.  Commander Hale.  Q. Commander Hale.  And that was during that first meeting where you discussed that you

14

obligation to inform their employers, either directly or otherwise, of behavior that they find objectionable before employers can be held responsible for failing to correct that behavior. . . ." Whitmore v. O'Connor Management, Inc., 156 F.3d 796, 800 (8th Cir. 1998). Plaintiff did not appropriately inform Defendant of the objectionable behavior; instead, upon hearing from another employee about the objectionable behavior on December 1, 2003, Commander Hale undertook to conduct a meeting between relevant parties on December 4, 2003, within three days of becoming aware of the alleged harassment. The alleged sexual harassment stopped on December 4, 2003. This demonstrates appropriate corrective action by Defendant. Plaintiff has failed to raise questions of material fact sufficient to overcome Defendant's motion for summary judgment. Therefore, Defendant England's motion for summary judgment (Doc. No. 88) is **GRANTED** to the extent that Defendant Jones is considered a co-worker of Plaintiff.

b.      Supervisor Sexual Harassment

Even if Defendant Jones were viewed as Plaintiff's supervisor, Defendant argues that Plaintiff's claims still fail. Defendant can establish an affirmative defense to vicarious liability for supervisor harassment by demonstrating "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the Plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington Indus., 524 U.S. at 765; Faragher, 524 U.S. at 807.

As discussed above in the statement of facts, the Navy had a widely disseminated

were uncomfortable, or was it a subsequent meeting? A. This was on December 4th.")

sexual harassment policy, of which Plaintiff admits she was aware. During the time between October 14, 2003 (when Jones was assigned to the office) and December 4, 2003 (the time of the meeting between Commander Hale, Jones, and Plaintiff), Plaintiff did not avail herself of the remedial procedures provided in the sexual harassment policy, but instead directed co-workers not to disclose the comments made by Defendant Jones, told the CMEO of a few instances of inappropriate comments in November (requesting anonymity, that he take no action, and that she be allowed to pursue an informal resolution), and only when Commander Hale independently learned of the situation did a formal meeting take place. After December 4, 2003, no further acts of sexual harassment occurred. Under these facts, it is apparent that the employer exercised reasonable care to prevent and correct any sexually harassing behavior, and that Plaintiff unreasonably failed to take advantage of corrective opportunities provided by her employer. Accordingly, Defendant's motion for summary judgment (Doc. No. 88) shall be **GRANTED** as to all of Plaintiff's claims for sexual harassment against Defendant England, as stated in Count I of her First Amended Complaint.

　　　　　2.　　Retaliation Claim

Defendant England argues that Plaintiff cannot establish a claim for retaliation because the Navy did not take any action that could be considered materially adverse to a reasonable employee. Defendant notes the following categories of acts Plaintiff claims were retaliatory:

　　(1)　　Smirking by Jones and comments by Jones and Hartley to co-workers with the intent to isolate and ostracize Plaintiff (such as telling co-workers not to congregate at Plaintiff's desk, making negative comments about her

16

reputation, and berating her job performance); Plaintiff also claims Commander Hale failed to stop the rumors;

(2)     Comments by Hartley and Jones; Jones allegedly said he was going to "take down" Plaintiff, and Hartley alleged told Plaintiff she should "move on" from her job; Plaintiff also claims Commander Hale failed to address these comments;[11]

(3)     Restricting Plaintiff from flexible work hours at the end of the month for two months; and

(4)     Restricting civilian employees from "recreation day" on one occasion and from exercising during work hours for one month.

Plaintiff must demonstrate the following in order to make a prima facie case for retaliation: (1) Plaintiff engaged in statutorily protected activity; (2) Plaintiff suffered a materially adverse action by the employer; and (3) a causal connection between the two. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). In order to find an action to be "materially adverse," the Plaintiff must prove the employer's actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2409 (2006). Defendant states that Plaintiff cannot demonstrate the purported retaliatory actions were materially adverse, nor can she demonstrate a causal

---

[11]In her response, Plaintiff also claims that Commander Hale orchestrated a retaliatory scheme to "take the Plaintiff down." However, Plaintiff's only support for this assertion is the purported affidavit of Chief Waranch, which, as detailed earlier in the statement of facts, is not properly authenticated by a notary public, nor sworn under penalty of perjury. Therefore, the Court cannot consider this affidavit in making its determination on summary judgment.

17

connection between the purported retaliatory actions and her sexual harassment complaint.

As noted by Defendant, rude behavior (such as the comments made by Hartley and Jones as mentioned in category number (1), above) is not actionable. See id. at 2415 (noting that an "employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience," and further noting that snubbing by supervisors and co-workers is not actionable). Defendant notes that Hartley was not her supervisor, and therefore his complaints about her job performance had no effect on her pay, benefits, or hours; instead, Defendant notes that Plaintiff continued to receive scheduled raises and bonuses, as well as awards for exceptional performance in 2004 and 2005. The remainder of Plaintiff's claims relate solely to work environment and not Plaintiff's job performance, and are thus not actionable.

Additionally, Plaintiff complains that Jones and Hartley made comments that she should leave her job. Again, however, Jones and Hartley did not have supervisory authority over Plaintiff, and their comments had no consequence to Plaintiff's employment. As noted by Defendant, Plaintiff complained about Jones' comments on January 12, 2004, and her complaints were formally investigated from January 21 - 24, 2004. Following the investigation, Jones was placed on permanent administrative leave on January 26, 2004, and was detached from the Navy on February 21, 2004.[12] Further, Defendant notes that

_____

[12]Even assuming Jones had some supervisory authority over Plaintiff (which is highly questionable, given the undisputed material facts), his comments had no appreciable consequence to Plaintiff's employment. Once Plaintiff complained about Jones' comments, these were investigated and he was placed on leave within a few days of the conclusion of the investigation. The Navy took no action against Plaintiff in relation to Jones' comments.

Case 4:04-cv-00966-FJG   Document 147   Filed 03/01/07   Page 18 of 23

with respect to Hartley, the CMEO admonished Hartley to treat Plaintiff in a more friendly manner in the Spring of 2004. Defendant notes that comments without consequence (such as these, which were promptly corrected by the Navy), are not actionable. See Sims v. Health Midwest Physician Services Corp., 196 F.3d 915, 921 (8th Cir. 1999); Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 684 (8th Cir. 2001).

With respect to Plaintiff's claim that she was not allowed to work a flexible schedule at the end of the month for two months, Defendant notes that its contract with ETE required that all contractor work set hours and the contractor did not allow for overtime. Thus, Defendant states that at most, the terms of the contract between ETE and Defendant for contract employees were being enforced, and not that a change directed at her was made. Additionally, Plaintiff does not claim that she was unable to do her job, suffered any decrease in pay, had poor performance evaluations as a result, or that she was unable to comply with her obligations outside of work as a result of not being allowed to work a flexible schedule. See Washington v. Illinois Dept. Of Revenue, 420 F.3d 658, 662 (7th Cir. 2005) (noting a change in work hours would not be considered materially adverse for a normal employee, but if the change exploited a unique vulnerability of Plaintiff (such as the need to care for a child with Down syndrome), then such a change in schedule could be actionable). Additionally, Defendant notes the change was temporary, and as such is not actionable. See Saulsberry v. St. Mary's University of Minnesota, 318 F.3d 862, 868 (8th Cir. 2003). The Court agrees that Plaintiff's allegations do not demonstrate materially adverse actions.

Further, this Court agrees with Defendant that it cannot consider Plaintiff's allegation of not being allowed to use the fitness facility during working hours a materially adverse

19

action, as Plaintiff was not required to exercise as part of her job (in contrast with the military members of the command). In addition, Plaintiff's allegation that she and all other civilian employees were not allowed to attend an annual recreation day and picnic is not actionable as retaliation; instead, this policy obviously applied to all civilian employees, not simply Plaintiff, and even assuming that this was a materially adverse action (which it is not), in such an instance Plaintiff could not demonstrate a causal connection between her sexual harassment complaint and the alleged retaliatory behavior.

Therefore, for all the foregoing reasons, Defendant England's motion for summary judgment (Doc. No. 88) is **GRANTED** as to Plaintiff's retaliation claims stated in Count II of her First Amended Complaint.

## II. Defendant End to End, Inc.'s Motion for Summary Judgment (Doc. No. 90)

Defendant End to End, Inc. ("ETE") moves for summary judgment on Plaintiff's claims in Count I and Count II of Plaintiff's petition. Specifically, Defendant ETE states that Plaintiff's claims for sexual harassment fail because (1) Plaintiff abandoned her sexual harassment claim during the course of discovery; (2) Plaintiff's allegations of inappropriate conduct on the part of CMC Jones are insufficient as a matter of law to satisfy the "severe or pervasive" standard for hostile work environment sexual harassment claims under Title VII and the MHRA; and (3) because Plaintiff failed to notify ETE of CMC Jones' alleged conduct at the time it was occurring, ETE neither knew nor had reason to know of CMC Jones' conduct until months after the conduct had ceased and the Navy had removed CMC Jones from the workplace. In her response (Doc. No. 137, p. 1), Plaintiff states she opposes Defendant's motion only "to the extent that it denies liability for the reprisal and

20

retaliation against Plaintiff of which it had notice and negligently failed to act in any manner to protect Plaintiff, its employee." Accordingly, as Plaintiff concedes Defendant ETE's motion for summary judgment as to Plaintiff's sexual harassment claims against Defendant ETE, Count I of Plaintiff's First Amended Complaint (Doc. No. 39) shall be **DISMISSED** as to Defendant ETE.

Defendant ETE also moves for summary judgment as to Plaintiff's claims that ETE violated her Title VII and MHRA rights by failing to abate retaliation by members of the Navy, stating that these claims fail because (1) Plaintiff cannot show the alleged retaliatory conduct constituted materially adverse actions sufficient to satisfy her prima facie case of retaliation; and (2) even if Plaintiff could establish a prima facie case, she cannot rebut with evidence of pretext the legitimate non-retaliatory reasons for the actions taken. Plaintiff does not argue that Defendant ETE engaged in retaliatory conduct itself; instead, Plaintiff alleges that ETE performed a faulty investigation that did not uncover the purported retaliatory actions undertaken by the Navy. As Plaintiff's claims against the Navy fail for the reasons stated above in Section I, Plaintiff's claims against Defendant ETE must also be dismissed, as the actions taken by the Navy cannot be considered materially adverse. Therefore, Defendant ETE's motion for summary judgment (Doc. No. 90) is **GRANTED.**

### III.    Defendant Clayton Hartley's Motion to Dismiss, and Suggestions in Support Thereof (Doc. No. 138)

Defendant Hartley moves to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(c), as Plaintiff's claim against him has been discharged in bankruptcy. Defendant notes that he and his wife filed bankruptcy in the United States Bankruptcy Court

for the Eastern District of Louisiana prior to Plaintiff filing her complaint.[13] Defendant further notes that the acts complained of by Plaintiff occurred prior to the filing of bankruptcy, and Plaintiff's claim against Defendant Hartley was listed in Defendant Hartley's bankruptcy. On August 10, 2006, Defendant Hartley and his wife received a discharge order from the bankruptcy court. Plaintiff did not object to Defendant's bankruptcy or the discharge of her claim by the bankruptcy court.

Defendant Hartley now states that his dismissal is appropriate given that the claim against him has now been discharged in bankruptcy and Plaintiff has failed to object to same. See Fed. R. Civ. P. 8(c) and Jones v. Hoosman, 2005 WL 3159686, *5 (N.D. Ill. 2005). Plaintiff has filed no objections to Defendant's motion to dismiss.

Accordingly, for the reasons stated in Defendant's motion to dismiss, the Court **GRANTS** Defendant Hartley's motion to dismiss (Doc. No. 138). Plaintiff's claims against Defendant Hartley are dismissed with prejudice.

## IV.    Plaintiff's State Law Claims Against Defendant Jones

Having determined that the defendants' Motions for Summary Judgment as to all federal claims should be granted, the Court now addresses the remaining state law claims. In Lindsey v. Dillard's Inc., 306 F.3d 596, 598-99 (8th Cir. 2002), the court stated: "Under 28 U.S.C. § 1367, a district court may decline jurisdiction over supplemental claims if it 'has dismissed all claims over which it has original jurisdiction' . . . . 28 U.S.C. § 1367(c)(3)." "Federal courts are encouraged to 'exercise judicial restraint and avoid state law issues

---

[13]Plaintiff's claims against Defendant Hartley have been stayed pursuant to this Court's previous Order (Doc. No. 41). Defendant Hartley filed the pending motion in lieu of his status report due on November 20, 2006.

wherever possible.'" <u>Wojcik v. Courtesy Auto Sales, Inc.</u>, No. 8:01CV506, 2002 WL 31663298, *10 (D.Neb. Nov. 25, 2002) (citing <u>Condor Corp. v. City of St. Paul</u>, 912 F.2d 215, 220 (8th Cir. 1990)).  Therefore, because the only remaining claims are state law claims against defendant Jones (and Plaintiff has not pled that diversity jurisdiction exists over defendant Jones), the Court hereby declines to assert supplemental jurisdiction over the remaining state law claims and therefore will **DISMISS** Plaintiff's claims against Defendant Jones **WITHOUT PREJUDICE** to them being brought in state court.

**V.    Conclusion**

For the foregoing reasons:

(1)    Defendant England's Motion for Summary Judgment with Supporting Suggestions (Doc. No. 88) is **GRANTED** and all claims against Defendant England are **DISMISSED**;

(2)     Defendant End to End, Inc.'s Motion for Summary Judgment (Doc. No. 90) is **GRANTED** and all claims against Defendant End to End, Inc. are **DISMISSED**;

(3)    Defendant Clayton Hartley's Motion to Dismiss, and Suggestions in Support Thereof (Doc. No. 138) is **GRANTED**; and

(4)    Plaintiff's claims against defendant Jones are **DISMISSED WITHOUT PREJUDICE** to their re-assertion in state court.


**IT IS SO ORDERED.**


                                                    **/S/FERNANDO J. GAITAN, JR.**
Dated:   3/1/07                                     Fernando J. Gaitan, Jr.
Kansas City, Missouri                               Chief United States District Judge