**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

GINA JENKINS,                     )
                Plaintiff,      )
                           )
          v.                )        No. 04-0966-CV-W-FJG
                           )
DONALD C. WINTER,       )
                Defendant.    )

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court hereby makes the following findings of fact and conclusions of law based upon the evidence presented at a hearing held on February 9, 2010 and the record in this matter. The following findings of fact and conclusions of law pertain to (1) whether Plaintiff may reintroduce evidence regarding her previously dismissed claim for alleged acts of retaliation occurring after December 4, 2003 on the theory that such acts were part of a "continuous hostile environment sexual harassment" claim; (2) whether Plaintiff failed to exhaust her administrative remedies by seeking timely EEO counseling; and (3) whether the deadline for Plaintiff to seek timely EEO counseling is subject to equitable waiver or equitable tolling.

## <u>FINDINGS OF FACT</u>

**I.    Introduction of Evidence Concerning Acts Occurring After December 4, 2003.**

       1.    Plaintiff's First Amended Complaint filed on October 31, 2005 contained two counts, one for Sexual Harassment by Jones (Count I), and one for Retaliation by the Navy (Count II). <u>See</u> Plaintiff's First Amended Complaint (Doc. No. 39), p. 12; p. 14.

2.　　　Jones' sexually harassing conduct ended on December 4, 2003.  <u>See</u> Transcript of Proceedings from Hearing on February 9, 2010 ("Tr.") pp. 81:21-25; 82:1-19; 84:16-20; Plaintiff's Designations of Incidents, (Doc. Nos. 37 and 162); Gov't Ex. 65, Plaintiff's Deposition Vol. I, p. 139:17-25; Gov't Ex. 66, Plaintiff's Deposition, Vol. II, pp. 243:14-22; 417:24-25; 418:1-3; Plaintiff's Formal Complaint of Discrimination, Gov't Ex. 76.

3.　　　On July 17, 2006 Defendant filed its Motion for Summary Judgment with Supporting Suggestions.  (Doc. No. 88)

4.　　　Plaintiff filed her Suggestions in Opposition to Defendant's Motion for Summary Judgment on November 20, 2006.  (Doc. No. 136)

5.　　　Plaintiff did not argue in response to Defendant's motion for summary judgment that any post-December 4, 2003 conduct constituted part of her sexual harassment claim, or was part of a continuing hostile environment sexual harassment claim.  <u>See</u> Plaintiff's Suggestions in Opposition (Doc. No. 136).

6.　　　In her opposition, Plaintiff divided the pre- and post-December 4 conduct at issue into separate claims: "I.  Jones' Conduct Constituted Sexual Harassment" and "IV. Retaliation."  Plaintiff's Suggestions in Opposition (Doc. No. 136), pp. 8-10 and pp. 14-16.

7.　　　Plaintiff defined the length of the "continuing sexual harassment" as beginning with Jones' entry on duty in October 2003 and ending on December 4, 2003: "The actions of [Jones] . . . of . . . creating a work atmosphere for plaintiff of fear and intimidation **for almost two months** clearly constituted continuing sexual harassment." <u>See</u> Plaintiff's Suggestions in Opposition (Doc. No. 136), p. 1, ¶a (emphasis added).

8.      Plaintiff further alleged that the Command Staff of the Kansas City District "**then began** an orchestrated plan and pattern of reprisal and retaliation through isolating, defaming, ostracizing and disparaging plaintiff and attempting to obstruct her ability to perform her job in an attempt to cause her to resign" and ". . . Plaintiff suffered greatly from the retaliation." See Plaintiff's Suggestions in Opposition (Doc. No. 136), p. 2, ¶e (emphasis added); p. 8, ¶37.

9.      Finally, Plaintiff affirmatively argued that the conduct occurring after December 4, 2003 was "sufficient to meet the test of retaliation". See Plaintiff's Suggestions in Opposition (Doc. No. 136), pp. 15-16 ("Those persons within supervisory ranks were fully aware of the retaliation and reprisal visited on plaintiff by the District Command Staff and Chief Recruiter . . ."; "Such acts by the command staff of disparaging, isolating, vilifying, defaming plaintiff and attempting to prevent plaintiff from being able to do her job are clearly sufficient to meet the test for retaliation . . .").

10.     On March 1, 2007, the Court granted summary judgment in favor of Defendant on Plaintiff's sexual harassment claim and her retaliation claim as stated in Count II of her First Amended Complaint. See Order of Mar. 1, 2007 (Doc. No. 147), p. 20.

11.     The Court found that the sexual harassment ended on December 4, 2003. See Order of Mar. 1, 2007 (Doc. No. 147), p. 4.

12.     Plaintiff did not ask the Court to reconsider its summary judgment order on the basis that post-December 4 conduct should have been considered as part of her sexual harassment claim or as part of a "continuing violation." Instead, she appealed the order. In her brief on appeal she did not claim that this Court erred in failing to

consider post-December 4 conduct as part of her sexual harassment claim or as part of a "continuing violation." She did not mention that conduct or the retaliation claim at all. After the Eighth Circuit affirmed judgment against her on her retaliation claim, she simply filed an amended complaint editing out the words retaliation and reprisal.[1]

13.      The summary judgment order that Plaintiff appealed (Doc. No. 147) dismissed both Count I of her complaint for sexual harassment, and Count II for retaliation (Doc. No. 39, pp. 12-16). Count II of the complaint specifically referred to the post-December 4 conduct the basis of the retaliation claim. (Doc. No. 39), ¶32. However, the Plaintiff's brief on appeal only discussed Jones' pre-December 4 conduct that was set out as sexual harassment in Count I of her Complaint. Post-December 4 conduct was not mentioned in her brief on appeal. Both the summary judgment order and the Eighth Circuit opinion specified that the last act that the Plaintiff claimed to be sexual harassment occurred on or before December 4, 2003. (Doc. No. 147), p. 4; Jenkins v. Winter, 540 F.3d 742, 745 (8th Cir. 2008).

14.      After a detailed review of the facts, the Eighth Circuit affirmed that the sexual harassment ended on December 4, 2003. See Jenkins, 540 F.3d at 745.

15.      The Eighth Circuit found that Jones engaged in sexually offensive conduct between October 14, 2003 and December 4, 2003. Jenkins, 540 F.3d at 751; see also Plaintiff's Formal Complaint of Discrimination, Gov't Ex. 76.

---

[1]The Court previously sustained the Navy's motion in limine on the issue of retaliation (Doc. No. 178), which pointed out that after the unsuccessful appeal of her retaliation claim, the Plaintiff changed the headings in her Second Amended Complaint (Doc. No. 164) and designation of incidents (Doc. Nos. 37 and 162) to eliminate the words retaliation and reprisal, but she did not eliminate any of the incidents that were previously designated as part of the claim.

16.     On appeal, the Eighth Circuit remanded <u>only</u> Plaintiff's sexual harassment claim, and affirmed this Court's granting of summary judgment on the retaliation claim. <u>Jenkins</u>, 540 F.3d at 751.

17.     The Eighth Circuit found that Plaintiff's claim for retaliation was waived on appeal.  <u>Id.</u> at 751.[2]

18.     Plaintiff continued to refer to the evidence she used in reference to her now-dismissed retaliation claim in her Second Amended Complaint (Doc. No. 164, pp. 7-9) and Designation of Discriminatory Incidents (Doc. No. 162), pp. 2-4.[3]

19.     In response to Defendant's Motion in Limine on the Issue of Retaliation (Doc. No. 178) in which Defendant asserted that Plaintiff was attempting to rebrand the retaliatory conduct as sexual harassment, Plaintiff argued that by stating that the acts of retaliation occurring after December 4, 2003 were "based on sex," Plaintiff had "reserved the right to introduce continuing discriminatory acts in support of her substantive sexual harassment claim."  (Doc. No. 186), p. 4.

20.     On July 16, 2009, the Court sustained Defendant's Motion in Limine on the issue of retaliation (Doc. No. 178) and ordered that Plaintiff was precluded from mentioning at trial the events occurring after December 4, 2003.  <u>See</u> Order of July 16, 2009 (Doc. No. 205).

---

[2]The Eighth Circuit opinion notes that "In her opening brief, Jenkins did not present an issue for review as to retaliation.  She does not provide any argument on the retaliation claim.  In fact, the 'Argument' portion of the brief does not include the word 'retaliation.'"  <u>Jenkins v. Winter</u>, 540 F.3d 742, 751 (8th Cir. 2008).

[3]The evidence referenced in Doc. No. 164, pp. 7-9 and Doc. No. 162, pp. 2-4 is regarding events that allegedly occurred in January 2004 and later.

## II.    Contact With An EEO Counselor.

21.    Plaintiff alleged that the sexual harassment started in and around October 1, 2003 with the entry on duty of Command Master Chief Wesley Jones.  <u>See</u> Plaintiff's First Amended Complaint (Doc. No. 39), pp. 4-5, ¶9.

22.    Jones' sexually harassing conduct ended on December 4, 2003.  Tr. pp. 81:21-25; 82:1-19; 84:16-20; Gov't Ex. 65, Plaintiff's Deposition Vol. I, p. 139:17-25; Gov't Ex. 66, Plaintiff's Deposition, Vol. II, pp. 243:14-22; 417:24-25; 418:1-3; Plaintiff's Formal Complaint of Discrimination, Gov't Ex. 76.

23.    Pursuant to federal regulations, a federal employee must contact an EEO counselor within 45 days of alleged discriminatory conduct.[4]  29 C.F.R. § 1614.105(a).

24.    Plaintiff contacted a Navy EEO counselor on February 10, 2004, 68 days after the sexual harassment ended.  Tr. p. 83:10-18; Plaintiff's Formal Complaint of Discrimination, Govt. Ex. 76.

## III.    Equitable Waiver or Equitable Tolling.

25.    Sean Williamson ("Williamson") was the Command Managed Equal Opportunity Officer (CMEO) for the recruiting district.  Tr. p. 165:15-18.

26.    As part of a quarterly and annual training program, Williamson presented training on November 2, 2003, that included sexual harassment prevention and informal, as well as formal, complaint procedures.  Tr. pp. 166:16-25; 167:1-25; 168:1-2; Gov't Ex. 15.

---

[4]There was a dispute as to whether the Navy's sexual harassment policy applied to Plaintiff because she was employed by End to End, a Navy personnel contractor.  In addressing Plaintiff's appeal against the Navy, the Eighth Circuit assumed the Navy's policy applied.  <u>Jenkins v. Winter</u>, 540 F.3d 742, 745 n.3 (8th Cir. 2008).

27.     Williamson posted information about EEO procedures, including the "red light-yellow light-green light" Resolution Procedures Pamphlet that included a simple explanation of the 45-day counselor contact requirement.  Tr. pp. 171:17-25; 172:1-6; 175:10-25; 176:1-25; 177:1-8; Govt. Ex. 12, p. 6.

28.     The other civilian witnesses who testified each affirmed that they were familiar with the "red light-yellow light-green light" Resolution Procedures Pamphlet. (Witness Patricia Hertzog, Tr. p. 99:4-9; Witness Katherine Cherrito, Tr. pp. 139:22-25; 140:1; Witness Stephanie Kretzer, Tr. p. 154:11-16).

29.     Plaintiff admitted that she was familiar with "red light-yellow light-green light" training.   Tr. pp. 59:9-14, 23-25; 60:1-7; 93:23-25; 94:1-7.

30.     Plaintiff admitted she attended sexual harassment training sessions, but was either evasive or forgetful regarding the details of that training.  Tr. pp. 59:9-25; 60:1-7; 70:11-20; 35:5-10; 14:9-14; 85:10-20.

31.     There were bulletin boards with numerous EEO postings (Gov't Exs. 4-10), a weekly newsletter that contained EEO reminders (Gov't Ex. 16); an advice line, an inspector general's hotline and a direct phone line and e-mail address for the Navy EEO Office (Gov't Exs. 4-10).

32.     Plaintiff admitted she passed by the bulletin boards several times each day.  Tr. p. 61:2-23.

33.     Plaintiff went to Williamson to discuss EEO procedures during the week of November 17, 2003.  Tr. p. 189:2-16.

34.     At that meeting, Williamson told Plaintiff that both formal and informal complaint procedures were available.  Tr. p. 63:11-16.

35.     During her November 17, 2003 meeting with Williamson, Plaintiff specifically told Williamson that she did not wish to make a formal complaint at that time.  Tr. p. 63:17-21.  Plaintiff told Williamson she wanted to handle the matter herself.  Tr. p. 63:22-24.

36.     Further, Plaintiff requested anonymity and requested that Williamson not tell anyone else about her situation.  Tr. pp. 63:25; 64:1-2.

37.     Navy personnel did not specifically inform Plaintiff that she had 45 days to contact an EEO counselor if she desired to file a formal complaint.  Tr. pp. 231:10-25; 232:9-11; 45:6-9.

38.     Plaintiff never returned to Williamson to discuss taking her complaint "outside" the command, or to ask how to file a formal complaint.  Tr. p. 197:22-25.

39.     According to the Plaintiff's own testimony, Executive Officer Michael Borrosh ("Borrosh") developed a hunch that there might be an issue of sexual harassment based on an email from Williamson to all members of the command repeating a weekly newsletter EEO reminder to treat all persons with respect and dignity.  Borrosh took proactive action to determine if there was an issue and directly asked the Plaintiff if she was being sexually harassed on November 25, 2003.  The Plaintiff did not reveal Jones' conduct, but assured Borrosh that she was handling the situation herself.  Tr. pp. 66:16-25; 67:1-2; 21-25; 68:1-12; 24-25; 69:1-12.

40.     After learning that there was a potential issue of sexual harassment on December 1, 2003, Commander Hale took immediate action to resolve the situation on December 4, 2003, with only reluctant participation by the Plaintiff.  Tr. pp. 235:19 to

237:22. Hale pointedly told Jones that his military career would be "done" if Jones did not immediately stop all sexually offensive conduct.  Tr. p. 239:9-15.

41.     At the meeting on December 4, 2003, an agreement was reached that the matter would be handled within the Command.  Tr. p. 229:15-18.  The agreement was reached with all parties present, including Plaintiff and Ms. Hertzog, and after a discussion about professional courteous behavior, apologies were rendered between the parties and it was asked multiple times "is this okay."  At that point everyone was dismissed.  Tr. p. 229:19-25.

42.     Following the December 4, 2003 meeting, Williamson believed the matter was informally resolved.  Tr. p. 231:10-18.

43.     Hale's demeanor and testimony indicated that his motivation was to keep good order and discipline at the command, and allow the Plaintiff to complete her work without interruption or distraction.  Tr. p. 255:7-14.

44.     Hale reported the action he took to his superior officer, the Commodore for Navy Central Recruiting Command, immediately after the December 4, 2003, meeting in which Hale admonished Jones.  Tr. pp. 243:4-18; 244:2-19. Hale's demeanor indicated that neither he nor anyone else wanted to keep the Plaintiff's allegations secret or that he or anyone else told her to she had to keep her complaints "in-house." Id.

45.     The Plaintiff appeared to be upset at work on January 9, 2004 after learning of alleged rumors about herself.  Hale initiated action to resolve the situation, by asking the Plaintiff to write a statement, and initiating an independent investigation.  Tr. pp. 241:15-25; 242:1-8; Gov't Ex. 33. The Plaintiff again only reluctantly agreed to

write a statement, and again expressed a desire to handle the situation informally. Tr. pp. 242:13-24.

46.  The Plaintiff never went to Hale to ask him whether she could pursue a formal complaint against the Navy. Tr. pp. 246:3-6; 248:11-20.[5]

47.  Hertzog had an acquaintance and contact number for an individual at the Inspector General's Office that she had met prior to December 4, 2003. Tr. p. 101:16-24. Hertzog made one phone call to him on December 4, 2003, after the Plaintiff was first asked to participate in a meeting with Jones, but before the Plaintiff would agree to disclose Jones' conduct, and did not attempt to call anyone else until January 30, 2004. Tr. p. 112:5-7. The Plaintiff did not make the call, and based on all of the evidence, and the witness' demeanor while testifying, it was apparent that at the time of the phone call by Hertzog, the Plaintiff did not have the intent to begin the EEO process. Tr. p. 111:8-15.

---

[5]Plaintiff alleges in her affidavit of November 18, 2006 that in early January 2004 she inquired of Commander Hale and Executive Officer Borrosh "how to formally file a complaint under the Navy's complaint system." See Affidavit of Gina Jenkins, Pl's Ex. I to Ex. 266-1. Not only does this undermine Plaintiff's current argument that she was confused about whose policy she fell under, it directly contradicts her testimony that she thought she had already initiated a formal complaint by talking to Commander Hale on December 4, 2003:

> A formal procedure would be me meeting with the Command and telling the Command what was happening to me and then the Command taking over and handling it. As far as I was concerned at that time, and maybe even now, that was the formal procedure, and no one explained to me any differently. . . . I assumed a formal procedure would be that we would go to Commander Hale and tell him what was happening in the Command.

Tr. p. 78:6-21.

48.     The Plaintiff was never told that she could not seek Navy EEO counseling or that Navy formal complaint procedures did not apply to her.  To the contrary, Williamson told Plaintiff that she could file a formal complaint as early as the week of November 17, 2003, and the Plaintiff testified that "her sense at that time" was that the Navy formal complaint procedures did apply to her.  Tr. pp. 63:11-16; 70:5-10.

49.     Plaintiff did not ask Williamson what the formal procedure was.  Tr. p. 78:18-19.

50.     The Navy did not take affirmative action to delay or prevent the Plaintiff from utilizing the readily available information to contact a Navy EEO counselor.  In fact, the Plaintiff contacted a counselor without consulting Hale, Williamson or Borrosh.  Hale found out from the Navy EEO Counselor that the Plaintiff had made the contact.  Tr. p. 248:16-20.

51.     The Navy EEO Office did nothing to discourage or prevent the Plaintiff from making contact prior to February 10, 2004.  The Navy EEO office simply investigated whether the Plaintiff should be considered to be an employee of the Navy or an independent contractor after she made counselor contact.  Tr. pp. 245:20-25; 246:1-2; 252:22-25; 253:1; 256:2-9.  After the contact was made, counselor Bill Fisher never asked the Plaintiff to withdraw from counseling. See Pl. Ex. 50.

52.     The Plaintiff made no independent effort to contact a Navy EEO counselor prior to February 10, 2004, 68 days after the sexual harassment ended on December 4, 2003.  Tr. p. 83:10- 18; Gov't Ex. 76.

53.     The Plaintiff did not have the intent to begin the EEO process until at least January 31, 2004, more than 45 days after the sexual harassment by Jones ended, and

11

she did not make a diligent effort to contact an EEO counselor until February 10, 2004, 68 days after the sexual harassment ended.  Tr. pp. 91:23-25; 92:1-5; 17-25; 93:1-4.

54.    When Plaintiff contacted her employer, End to End, in late January or early February 2004, End to End told her they did not know what to do for her.  Tr. pp. 90:20-25; 91:1-25; 92:1-21.

55.    When Plaintiff contacted the State of Missouri in late January or early February 2004, she was told that she did not fall under their policy and did not know how to handle her claim.  Tr. p. 92:22-25.

56.    The only time that the Plaintiff went to Williamson to discuss complaint procedures was during the week of November 17, 2003.  Tr. p. 189:2-16. He told her that both formal and informal complaint procedures were available.  Tr. p. 63:11-16. At that time, the Plaintiff requested anonymity and wanted to handle Jones' conduct herself.  Tr. p. 63:17-24. She never returned to Williamson to discuss taking her complaint "outside" the command, or to ask how to file a formal complaint.  Tr. p. 197:22-25.

## CONCLUSIONS OF LAW

### IV.    Plaintiff's Claim for Sexual Harassment After December 4, 2003 Based on a Continuing Violation Theory Must Fail.

The "law of the case" doctrine prohibits relitigation of the retaliation issue at this stage of the litigation because it has already been decided on appeal.  Maxfield v. Cintas Corp., 487 F.3d 1132, 1134-35 (8th Cir. 2007).  The conduct occurring after December 4, 2003 was before the Eighth Circuit and was disposed of by its mandate, was finally settled, and cannot be reexamined.  Klein v. Arkoma Production Co., 73 F.3d

779, 784 (8th Cir. 1996).  In addition, Plaintiff's late attempt to recast the acts of retaliation as continuing sexual harassment is not supported by the evidence.  The Court finds no evidence that the post-December 4 conduct was based on sex, as is required to establish a prima facie case of a sexually hostile work environment.  42 U.S.C. § 2000e *et seq.*; Sutherland v. Missouri Dep't Of Corrections, 580 F.3d 748, 750 (8th Cir. 2009).

Retaliation is a separate, independent, and distinct cause of action available to employees who suffer a materially adverse action that is causally connected to protected activity.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Plaintiff argues that while she was "uncertain" whether the acts after December 4, 2003 might meet the test for retaliation, the Court should nevertheless have construed them as part of her sexual harassment hostile environment claim–tied together by a continuing violation theory.  Plaintiff's argument is without merit.

The post-December 4 conduct was not similar to or part of the series of sexually harassing actions by Jones.  Jones' sexually harassing conduct was interrupted and stopped by Commander Hale.   The post-December 4 conduct therefore cannot support a continuing violation theory, as the conduct was not a continuation of any conduct occurring prior to that date.  See, e.g., National R.R. Passenger Corp. V. Morgan, 536 U.S. 101, 120, n.12, 122 S. Ct. 2061 (2002) (hostile environment claims depend upon proof of repeated conduct extending over a period of time); see also  Holland v. Sam's Club, 2005 WL 3489151 at *11 (W.D. Mo. 2005), aff'd, 487 F.3d 641, 644 (8th Cir. 2007);  (". . . a hostile work environment claim, by its very nature, involves repetitive conduct . . . .");  Sutherland v. Missouri Dep't of Corrections, 580 F.3d 748, 752 (8th Cir.

2009) (hostile work environment claim dismissed on summary judgment because the initial "incident with [the harasser] involved offensive touching.  The other harassment alleged did not involve [the same harasser] or physical contact.").

As noted previously, Plaintiff herself stated that Jones' conduct was "continuing sexual harassment" beginning with Jones' entry on duty in October 2003 and ending on December 4, 2003, and that subsequently the Command Staff of the Kansas City District "then began an orchestrated plan and pattern of reprisal and retaliation through isolating, defaming, ostracizing and disparaging plaintiff and attempting to obstruct her ability to perform her job in an attempt to cause her to resign. <u>See</u> Plaintiff's Suggestions in Opposition (Doc. No. 136), p. 2, ¶e.  Further, Plaintiff plainly asserts that "[t]he retaliation was 'orchestrated by Commander Hale and Chief Recruiter Hartley.'" <u>Id.</u> at p. 15.

There is simply no evidence in this case of repeated conduct after December 4, 2003 or any continuation of Jones' sexually harassing conduct after that date sufficient to support an extension of Plaintiff's sexual harassment claim based on a continuing violation theory.

The Court finds that Plaintiff's claim that evidence of conduct occurring after December 4, 2003 should be permitted as part of a sexual harassment hostile work environment claim based on a continuing violation theory is hereby **DISMISSED**.

**V.     Plaintiff Failed to Exhaust Her Administrative Remedies by Seeking Timely EEO Counseling.**

In order to sue an agency of the United States pursuant to Title VII, a plaintiff must establish that there has been a waiver of sovereign immunity.  <u>Watson v. O'Neill</u>,

365 F.3d 609, 614 (8th Cir. 2004). The Plaintiff does not dispute this principle. (Doc.

No. 266, p. 2). As previously noted, a federal employee must contact an EEO

counselor within 45 days of alleged discriminatory conduct. 29 C.F.R. § 1614.105(a).

Based on the credible evidence adduced at the hearing, the Plaintiff did not timely seek

EEO counseling within 45 days of December 4, 2003.

Conditions to the waiver of sovereign immunity, such as the time limits of 42

U.S.C. § 2000e-16, must be strictly construed. Irwin v. Department of Veterans Affairs,

498 U.S. 89, 111 S.Ct. 453, 456 (1990). The Plaintiff admits that she failed to seek

timely EEO counseling, but argues that her late EEO counselor contact should be

excused based on considerations of equitable tolling or equitable estoppel.

Considerations of equitable tolling or equitable estoppel make up part of the court's

determination whether an action falls within the scope of the waiver of sovereign

immunity granted by Congress, and thus, within the jurisdiction of the federal courts.

United States v. Brockamp, 519 U.S. 347, 117 S.Ct. 849 (1997); T.L. v. United States,

443 F.3d 956, 961 (8th Cir. 2006). Moreover, since the issue goes to jurisdiction, it is for

the Court to decide. Therefore, based on the Plaintiff's failure to exhaust her

administrative remedies, there has not been a waiver of sovereign immunity by the

United States and the Court is without jurisdiction to proceed, unless equitable tolling or

estoppel applies to extend the deadline.

**VI.    Neither Equitable Tolling nor Equitable Waiver of the 45-Day Time Period for Contacting an EEO Counselor Is Available In This Case.**

The party who is claiming the benefit of an exception to the operation of a statute

of limitation, such as equitable tolling, has the burden to prove entitlement to it. Irwin v.

Department of Veterans Affairs, 498 U.S. 89, 96 S.Ct. 453, 456 (1990). Courts have historically "extended equitable relief only sparingly." Id.; Pecoraro v. Diocese of Rapid City, 435 F.3d 870, 875 (8th Cir. 2006) ("Courts generally require strict compliance with a statue of limitations and rarely invoke doctrines such as equitable tolling . . ..").

### A. Equitable Tolling.

Equitable tolling is appropriate when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on *the existence of his claim.* Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1328 (8th Cir. 1995) (emphasis added). In this case, Plaintiff was aware of the existence of her claim. As such, equitable tolling is not a remedy for failure to diligently pursue the filing of a complaint concerning a known claim, and the doctrine is inapplicable in this case.

Here, the Plaintiff did not act diligently in filing her complaint. During her November 17, 2003 meeting with Williamson, Plaintiff specifically told Williamson that she did not wish to make a formal complaint at that time. Tr. 63:17-21. Plaintiff told Williamson she wanted to handle the matter herself. Tr. 63:22-24. Further, Plaintiff requested anonymity and requested that Williamson not tell anyone else about her situation. Tr. 63:25; 64:1-2. Plaintiff never returned to Williamson to discuss taking her complaint "outside" the command, or to ask how to file a formal complaint. Tr. 197:22-25.

When Borrosh took proactive action on November 25, 2003 to determine if there was an issue, and directly asked the Plaintiff if she was being sexually harassed, Plaintiff did not reveal Jones' conduct, but assured Borrosh that she was handling the situation herself. Tr. 66:16-25; 67:1-2; 21-25; 68:1-12; 24-25; 69:1-12. After learning

16

that there was a potential issue of sexual harassment on December 1, 2003, Commander Hale took immediate action to resolve the situation on December 4, 2003, with only reluctant participation by the Plaintiff.  Tr. 235:19 to 237:22.  On a subsequent occasion, Hale initiated action on Plaintiff's complaints about the rumors circulation about her by asking the Plaintiff to write a statement, and initiating an independent investigation. Tr. 241:15-25; 242:1-8; Gov't Ex. 33. The Plaintiff again only reluctantly agreed to write a statement, and again expressed a desire to handle the situation informally. Tr. 242:13-24.

It was the Plaintiff's sister, Patricia Hertzog ("Hertzog"), who finally called the Navy EEO Office after she and the Plaintiff were allegedly encouraged to by a Navy investigator, on February 2, 2004 (59 days after December 4). Tr. 107:12-13. Hertzog first attempted to call the EEOC and the Missouri Commission on Human Rights on January 31, 2004 (57 days after December 4), allegedly based on information posted on Navy bulletin boards. Tr. 112:5-7. Hertzog's calls were made after the deadline had passed,[6] and the Plaintiff made no effort at all, other than to talk to a Navy EEO counselor that Hertzog called on February 10, 2004 (68 days after December 4). Plaintiff, whether due to a lack of diligence or for other reasons of her own, failed to timely file a formal complaint and thereby failed to exhaust her administrative remedies.

---

[6]Hertzog claims that she called an acquaintance with the Navy IG on December 4, following the Plaintiff's refusal to participate in a meeting with Hale, and before the Plaintiff was persuaded to discuss the harassment. This cannot be said to represent contact **by the Plaintiff** with someone logically connected with the EEO process and demonstration of the Plaintiff's intent to begin EEO counseling, as is required under the law. Culpepper v. Schafer, 548 F.3d 1119, 1122 (8th Cir. 2008). At that point, the Plaintiff was refusing to even disclose the conduct.

Therefore, Plaintiff's claim must be dismissed unless the evidence establishes grounds for the application of equitable estoppel.

**B.      Equitable Estoppel.**

Equitable estoppel comes into play when a defendant takes active steps to prevent a plaintiff from suing on time.  <u>Dring v. McDonnell Douglas Corp.</u>, 58 F.3d 1323, 1329 (8th Cir. 1995).  The doctrine applies if the employee's failure to file in a timely fashion is the consequence of either a "deliberate design" by the employer or of actions that the employer should unmistakenly have understood would cause the employee to delay filing his charge.  <u>Id.</u> at 1329 ("[E]quitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit.") (citations omitted); <u>see</u> <u>also</u> <u>Bailey v. United States Postal Serv.</u>, 208 F.3d 652, 655 (8th Cir. 2000).  In other words, the Plaintiff has the burden to prove that but for the conduct of the Navy she would have made timely EEO counselor contact.

**1.      Plaintiff Was Aware Of The 45-Day Deadline For Filing A Formal Complaint.**

There is no credible evidence that the Navy deliberately tried to delay the Plaintiff's counselor contact. The Plaintiff did not testify at the evidentiary hearing that anyone told her she could not contact an EEO counselor, only that she was not expressly told that she could after she disclosed Jones' conduct.  That evidence is not sufficient to overcome the notice that was provided by the Navy before December 4.

The 45-day deadline for filing a formal complaint of discrimination can be extended if a complainant was not notified of the time limits and was not otherwise

aware of them. <u>Bailey</u>, 208 F.3d at 654; <u>Miller v. Runyon</u>, 32 F.3d 386, 389 (8th Cir. 1994); <u>Hoffman v. Rubin</u>, 193 F.3d 959, 964, fn. 3 (8th Cir. 1999) (The 45-day time period may not be extended when it is shown that an employee was aware of her rights); <u>Coons v. Mineta</u>, 410 F.3d 1036, 1040 (8th Cir. 2006) (if an employee had a way to obtain knowledge of the deadline, equitable tolling does not apply). A plaintiff may not claim that she was unaware of the time limitations period where she received "constructive notice" by virtue of postings like the one at the Navy workplace. <u>Bailey</u>, 208 F.3d at 655.

The credible evidence showed that EEO resources in the form of written policies, EEO training, EEO reminders and EEO postings were widely available at the Navy office. Here, the Plaintiff had at least constructive notice of the counselor contact requirement from more than one source. The Plaintiff testified evasively about her knowledge of the EEO process, but admitted that it was possible that she attended training on complaint procedures, and that she was familiar with "red light-yellow light-green light training." Tr. 59:9-14, 23-25; 60:1-7; 94:19-25; 95:1-7.

Williamson testified with documentary support that he presented regular training, and that specifically on November 2, 2003, he presented training that included sexual harassment prevention and formal complaint procedures. Tr. 166:16-25; 167:1-18; Gov't Ex. 15. Williamson provided training on the "red light-yellow light-green light" resolution procedures pamphlet that included a simple explanation of the 45-day counselor contact requirement. Govt. Ex. 12, p. 5. All civilian members of the command who testified were familiar with the pamphlet. In addition, Williamson posted the pamphlet on a common bulletin board and made it available.

19

The Plaintiff was also notified of the 45-day requirement in EEO postings on large, accessible bulletin boards and in the Navy policy. Gov't. Exs. 4-14. The Plaintiff admitted that she saw "red, white and blue" posters with the Navy personnel website listed, as well as an email address and an advice line. One poster had a simple flow chart beginning with the step, "45 days to contact counselor." Gov't. Ex. 9. The Plaintiff's co-worker, Stephanie Kretzer, repeatedly encouraged the Plaintiff to take advantage of the posted EEO contact information, both before and after December 4, 2003. Tr. p. 152:11-12.

The Plaintiff claimed at the evidentiary hearing that in addition to the training and postings the Navy provided, that the Navy should have been required to explicitly tell her that she would only have 45 days to make contact with an EEO counselor if she wanted to sue the Navy, after Hale persuaded her to disclose her allegations against Jones. However, there is no such requirement in the law. The analogous case of Nygren v. Ashcroft, No. Civ. 02-2910, 2003 WL 21356083 (D. Minn. May 30, 2003), aff'd, 109 Fed. Apex. 816, 2004 WL 1879687 (8th Cir. 2004) is instructive on this point.

In Nygren, the plaintiff reported alleged sexual harassment to her supervisor and met with an EEO counselor five days later to discuss the alleged harassment. 2003 WL 21356083 at *1. The employer conducted an investigation of the allegations. Id. The court found that the plaintiff met with an EEO counselor less than 45 days after the alleged sexual harassment had ended. Id. at *2. However, at that meeting, the plaintiff did not request EEO counseling and therefore, relying on Bailey v. United States Postal Serv., 208 F.3d 652 (8th Cir. 2000), the court held that the meeting did not satisfy the requirements of section 1614.105(a)(1). Id. In addition, the plaintiff told the EEO

counselor that she would be interested in starting the EEO process if the employer's investigation "did not resolve the issue."  Id. at *3.  She also told a special investigative supervisor that "she had an understanding with the alleged harasser that 'if this becomes a problem again, [she would] take further action.'"  Id.

Neither the EEO counselor nor the special investigative supervisor ever told the plaintiff in Nygren about the 45-day time limit for starting the administrative process.  Id. According to the plaintiff, her employer should "unmistakenly have understood that their silence on this issue would cause [her] to delay starting the administrative process."  Id. The court disagreed, citing the various measures the employer had taken to notify her of the 45-day time limit for starting the administrative process, including providing her with a copy of their program statement on sexual harassment, providing training programs which included instruction on their sexual harassment policy, and placing a poster detailing the EEO complaint process near the supervisor's office.  The court concluded that in light of these measures, the employer "neither lulled nor tricked Nygren into letting the 45-day time limit pass."  Id. at *3.

As in Nygren, Defendant in this case made its sexual harassment policy available to Plaintiff though the "red light-yellow-light-green light" pamphlet and training.  The pamphlet contained specific instructions on beginning the formal complaint process, including the 45-day time limit.  Plaintiff was familiar with the "red light-yellow light-green light" training.  Defendant regularly conducted sexual harassment training sessions and Plaintiff admitted she attended sexual harassment training.  Further, Defendant placed numerous flyers and posters containing EEO information, including the red light-yellow light-green light pamphlet, on a bulletin board that Plaintiff admitted walking past five or

21

six times a day.  Tr. p. 61:2-23.  One of Defendant's posters was an EEO Complaint Process flowchart which clearly stated: "Here's something everyone should know about!" with the 45-day time limit listed as the first step in the process.  Gov't Ex. 9.

The Plaintiff never went back to Williamson after her first contact with him in November when he told her she could "file a formal complaint," and she disavowed any intent to pursue a formal complaint.  See Bailey at 654-55 (in early conversations with EEO counselors, the Plaintiff explicitly disavowed any intent to request EEO counseling at that time and therefore waived any argument that such contacts complied with section 1614.105(a)).  Hale and Borrosh were proactive in discovering, and initiating resolution of the Plaintiff's sexual harassment claim, and an investigation of her retaliation claim, with the Plaintiff resisting at every stage.  The Plaintiff never asked Hale or Borrosh about seeking EEO counseling or the Navy's formal complaint procedures.

> **2.      Plaintiff Has Failed To Establish a Deliberate Design Intended to Prevent Her From Timely Filing A Formal Complaint.**

Although there was "some confusion" about whom Plaintiff should talk to regarding her complaint (Tr. p. 135:2-19), confusion does not amount to a "deliberate design" by the Navy, or actions that the Navy should unmistakenly have understood would cause Plaintiff to delay filing her charge.

In fact, Plaintiff's employer, End to End, told her they did not know what to do for her.  The State of Missouri was confused about what policy applied to Plaintiff.  Although the Navy EEO counselor stated that "it did not appear" that Plaintiff fell under the Navy policy, he never suggested she withdraw from counseling.  Pl. Ex. 50.

Confusion on the part of multiple, unrelated entities does not amount to a deliberate design by the Navy to prevent Plaintiff from timely filing a complaint.  Indeed, far more egregious employer behavior than simple confusion has been held insufficient to rise to the level of "deliberate design."[7]

The Navy EEO Office ultimately dismissed the Plaintiff's claim. Plaintiff cites this fact as a reason to apply equitable estoppel to excuse her untimely counselor contact. The Navy EEO Counselor's report specifically indicates that the Plaintiff was not asked to withdraw from counseling.  The Plaintiff did not allege or prove that the Navy EEO counselor said or did anything to prevent the Plaintiff from making timely initial contact. The ultimate decision of Navy EEO Office does not excuse untimely counselor contact and has no bearing on the issue of equitable estoppel.

---

[7]See, e.g., Montoya v. Chao, 296 F.3d 952, 958 (10th Cir. 2002) (plaintiff suggested equitable tolling of the 45 day time limit was appropriate due to federal agency "misdirection" and "bureaucratic runaround" when she contacted EEOC asking for an extension of time and was referred to Civil Rights Center; was forced to leave a message for the director which was never returned; and sent a letter to the Civil Rights Center, and was then told it had no authority to waive the filing deadline. Held: These acts did not amount to active deception to warrant equitable estoppel); Thompson v. Runyon, No. 90-1080-CV-W-BC, 1994 WL 803276 at *24 (W.D. Mo. 1994), aff'd 46 F.3d 1136 (8th Cir. 1995) (EEO Counselor who "completely neglected" to do his job by ignoring and failing to respond to Plaintiff's letters regarding complaints did not lull plaintiff into sleeping on her rights; and was not evidence of "positive misconduct" sufficient to invoke equitable tolling.); Hamilton v. West, 30 F.3d 992, 994 (8th Cir. 1994) (plaintiff alleged that Army and EEOC's failure to advise plaintiff of the various fora in which he could pursue his claims was sufficient to toll limitations period.  Held: ". . . any inadequacy of the notification by the [employer], even if shown, does not warrant the application of equitable estoppel.  [Plaintiff] has introduced no evidence that the [employer] acted pursuant to a 'deliberate design' or an unmistakable understanding that [plaintiff] would delay filing his charges."); Hedrich v. Bd. of Regents of Univ. Of Wis. Sys., 274 F.3d 1174, 1182 (7th Cir. 2001) (instances of employer behavior meeting the definition of "deliberate design" are "typically acts of wrongdoing such as hiding evidence or promising not to rely on a statute of limitations defense").

Plaintiff failed to initiate contact with an EEO counselor within 45 days of the alleged discrimination as required by 29 C.F.R. § 1614.105(a)(1), and the Plaintiff has failed to prove that the rare application of the doctrines of equitable tolling or equitable estoppel are justified. The United States has not waived sovereign immunity due to the Plaintiff's failure to exhaust administrative remedies on her claim for sexual harassment, and the Court lacks jurisdiction to proceed. Therefore, the sole remaining cause of action against the Navy for sexual harassment is hereby DISMISSED.

IT IS SO ORDERED.

/s/Fernando J. Gaitan, Jr.
Chief United States District Judge

Dated: March 19, 2010
Kansas City, Missouri